FILED

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

2009 SEP 21 A 9: 06

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

SCOTTSDALE INSURANCE
COMPANY, an Arizona corporation,

   Plaintiff,

vs.

PROCOM TOWERS, INC., a Tennessee
Corporation; R. DAVID STILES d/b/a
PROCOM TOWERS, INC., an
individual; COX BROADCASTING,
INC., a Georgia Corporation; and,
RENDA BROADCASTING CORP., a
Delaware Corporation.

   Defendants.
_____/

CASE NO. 3:09-cv-952-J-32JRK

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, SCOTTSDALE INSURANCE COMPANY ("Scottsdale"), by and through its undersigned counsel, hereby sues Defendants, PROCOM TOWERS, INC., a Tennessee corporation; R. DAVID STILES d/b/a PROCOM TOWERS, INC., an individual; COX BROADCASTING, INC., a Georgia Corporation, and RENDA BROADCASTING CORP, a Delaware corporation, and seeks declaratory judgment for purposes of determining a question of actual controversy among the parties.

### THE PARTIES

1.   At all pertinent times, Plaintiff Scottsdale was a corporation organized and existing under the laws of the State of Arizona with its principal place of business in Scottsdale, Arizona.

2. Upon information and belief, at all times pertinent, Defendant ProCom Towers, Inc. ("ProCom") was a corporation organized and existing under the laws of the State of Tennessee, with its principal place of business in Chattanooga, Tennessee.

3. Upon information and belief, at all times pertinent, Defendant R. David Stiles d/b/a ProCom Towers, Inc. was an individual living in or around Chattanooga, Tennessee. (ProCom and R. David Stiles d/b/a ProCom Towers, Inc. are hereafter collectively referred to as "ProCom").

4. Upon information and belief, at all times pertinent, Defendant Cox Broadcasting, Inc. ("Cox") was a corporation organized and existing under the laws of the State of Georgia, with its principal place of business in Atlanta, Georgia.

5. Upon information and belief, at all times pertinent, Defendant Renda Broadcasting Corp. ("Renda") was a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Pittsburgh, Pennsylvania.

## NATURE OF THE CLAIM

6. This is an action for declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, for the purposes of determining the rights and obligations, if any, of the parties relative to the insurance policies issued by Plaintiff Scottsdale to Defendant ProCom.

7. An actual controversy exists among the parties regarding the issue of coverage under the subject insurance policies.

## JURISDICTION AND VENUE

8.   This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship among the parties and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest, attorneys' fees and costs.

9.   Venue is proper in the United States District Court of the Middle District of Florida, Jacksonville Division, because a substantial part of the events or omissions giving rise to the claims asserted below occurred within this District.

## THE INSURANCE POLICIES

10.   Plaintiff Scottsdale issued to Defendant ProCom a commercial general liability insurance policy, Policy No. CLS816574, which was effective from February 18, 2002 through February 18, 2003 (the "02-03 Policy"). Defendant ProCom was the Named Insured under the 02-03 Policy. A true and accurate copy of the 02-03 Policy is attached hereto as **Exhibit "A."**

11.   Plaintiff Scottsdale issued to Defendant ProCom a commercial general liability insurance policy, Policy No. CLS1071340, which was effective from October 20, 2004 through February 9, 2005 (the date of cancellation) (the "04-05 Policy"). Defendant ProCom was the Named Insured under the 04-05 Policy. A true and accurate copy of the 04-05 Policy is attached hereto as **Exhibit "B."** (The 02-03 Policy and 04-05 Policy are hereafter collectively referred to as the "Policies").

12.   Pursuant to the Policies' insuring agreements, Plaintiff Scottsdale agrees to "pay those sums that the insured becomes legally obligated to pay as damages because of ... 'property damage' ... caused by an occurrence," provided that such "'property damage' occurs during the policy period."

## GENERAL ALLEGATIONS

13. Upon information and belief, Defendant Cox and Defendant Renda jointly operated a broadcast tower located at 1084 E. Adams St., Jacksonville, FL (the "Tower").

14. Upon information and belief, on or about December 18, 2002, Defendant ProCom entered into a construction contract with Defendant Cox and Defendant Renda to perform modifications and repairs on the Tower.

15. Upon information and belief, in January 2003, Defendant ProCom completed the work on the Tower, and subsequently received full payment of approximately $333,912.00 pursuant to the contract between it and Defendant Cox and Defendant Renda.

16. However, on or about December 10, 2004, Defendant Cox notified Defendant Pro Com that Defendant Cox and Defendant Renda found Defendant ProCom's work on the Tower to be inadequate.

17. By letter dated May 8, 2007, counsel for Defendant Cox and Defendant Renda demanded payment of $292,951.00 to perform remediation work and bring the Tower back up to acceptable condition. A true and correct copy of the May 8, 2007 letter received by Plaintiff Scottsdale is attached hereto as **Exhibit "C."**

18. Attached to the May 8, 2007 letter was a repair estimate prepared by an entity called Stainless and Doty Moore. A true and correct copy of the repair estimate received by Plaintiff Scottsdale is attached hereto as **Exhibit "D."**

19. The repair estimate sets forth a 23-item service list with a total service cost of $395,711.00. In the May 8, 2007 letter, counsel for Defendant Cox and Defendant Renda stated that items 18-23 of the letter, which totaled $292,951.00, described the portion of the work

necessary to remediate the conditions resulting from Defendant ProCom's alleged failure to properly perform its work.

20.   Items 18-23 in the attached repair estimate, a proposal for "materials, installation services and all-risk builders insurance to upgrade the existing tower," covered the following repair work:

(18) Rust treat to SSPC-SP3 level with needle gun, some sand blasting;

(19) Remove banding from leg flanges & clean between surfaces (needle nozzle sand blasting);

(20) Supply and install 2-3 mils DFT of Carboline Multibond 150 to all cleaned areas;

(21) Supply and install binding/primer coat to all tightly adhered paint;

(22) Supply and install 3-4 mils DFT topcoat such as Carboline 3359 to entire tower and mast;

(23) Supply five (5) years warranty against chalking peeling, flaking, chipping or rust.

21.   Defendant Cox and Defendant Renda demanded payment from or on behalf of Defendant ProCom in the amount of $292,951.00 to perform the remediation and bring the Tower back up to acceptable condition.

22.   However, items 18-23 in the repair estimate constitute the cost to repair Defendant ProCom's defective work, and the cost of removing or repairing Defendant ProCom's defective work does not constitute "property damage" under the Policies.

## UNDERLYING LAWSUIT

23.   On September 17, 2007, Defendant Cox and Defendant Renda filed the lawsuit styled, *Cox Broadcasting, Inc. and Renda Broadcasting Corp. v. Procom Towers Inc. and R.*

*David Stiles d/b/a ProCom Towers Inc.*, Case No. 16-2007-CA-008217-XXXX-MA, in the Circuit Court for the Fourth Judicial Circuit, In and For Duval County, FL (the "Underlying Lawsuit"). A true and correct copy of the complaint in the Underlying Lawsuit is attached hereto as **Exhibit "E."**

24. In the complaint in the Underlying Lawsuit, Defendant Cox and Defendant Renda allege that Defendant ProCom contracted to: (a) provide a "comprehensive rust abatement program" to rid the Tower of then-existing rust and treat the tower with chemicals and paints to prevent future rust and deterioration, (b) to rebuild portions of the Tower that were "not structurally sound," a process which involved the welding installation of custom fitted galvanized steel; c) to repair the structural members of the Tower; and d) to prime the Tower as needed and paint the entire Tower using specified painting products.

25. According to the complaint in the Underlying Lawsuit, Defendant ProCom completed its work pursuant to the contract in early 2003, and was paid approximately $333,912.00.

26. Then, in December 2004, Defendant Cox and Defendant Renda allegedly discovered latent and substantial defects in Defendant ProCom's workmanship.

27. The complaint in the Underlying Lawsuit includes an allegation that Defendant ProCom's defective work includes the following: (a) failing to remove all rust; (b) failing to remove all rotten and rusted metal; (c) improperly treating rusted metal that was not capable of being removed with a rust stop chemical; (d) improperly coating all repaired metal with a rust stop paint; (e) improperly filing in rusted pits in tower legs; and, (f) improperly priming and painting the Tower.

6

PD.2175785.1

28. Count I of the complaint is for breach of contract, Count II of the complaint is for Breach of Contractual Duty to Deliver Performed in a Workmanlike Manner, Count III of the complaint is for Breach of Implied Warranty of Good Faith and Fair Dealing, and Count IV of the complaint is for Violation of Florida Statute 768.0425.

29. In the complaint in the Underlying Lawsuit, Defendant Cox and Defendant Renda allege that, as a result of Defendant ProCom's poor workmanship, the Tower has incurred and will continue to incur ongoing damages.

## COUNT I: DECLARATORY RELIEF – DAMAGE TO PROPERTY EXCLUSIONS

30. Plaintiff Scottsdale adopts and incorporates by reference the allegations set forth in Paragraphs 1 through 29 above as though completely and fully set forth herein.

31. The Policies do not provide coverage to Defendant ProCom for its faulty work and any other alleged "property damage" resulting from its work based on the application of Paragraphs j(5) and j(6) of the Policies' Damage To Property Exclusions.

32. The Policies' Damage to Property Exclusions (j) bar coverage for "property damage," in pertinent part, to:

\* \* \*

(5) that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations; or

(6) that particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it.

\* \* \*

7

>Paragraph (6) of this exclusion does not apply to 'property damage' included in the 'products-completed operations hazard.'

33. "Your work" is defined in the Policies as "a. Work or operations performed by you or on your behalf; and b. Materials, parts or equipment furnished in connection with such work or operations."

34. The Policies' J(6) exclusions preclude coverage for damage to that particular part of any property that must be restored, repaired or replaced because Defendant ProCom's work was incorrectly performed on it. J(6) does not apply to property damage included in the products-completed operations hazard.

35. However, paragraph (b) of the Policies' definition for "products-completed operations hazard" states that it does not include property damage arising out of "... operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit."

36. The Supplemental Declarations list the following classification:

>Electrical apparatus installation, servicing & repair (products-completed operations are subject to the general aggregate limit).

37. The Policies' Declarations pages describes Defendant ProCom's business as "Radio Tower Repair and Maintenance."

38. Thus, Defendant ProCom's radio tower maintenance and repair operations, i.e., the operations that Defendant ProCom was performing on the Tower which allegedly caused damage to other property, are removed from the products-completed operations hazard, and, thus, subject to the Policies' J(6) exclusions.

39. Accordingly, all of the damages being asserted by Defendant Cox and Defendant Renda against Defendant ProCom, including the costs to repair or replace Defendant ProCom's allegedly defective work at the Tower, are excluded from coverage pursuant to Paragraphs (5) and (6) of the Policies' Damage to Property Exclusions.

## COUNT II: DECLARATORY RELIEF – DAMAGE TO YOUR WORK EXCLUSION

40. Plaintiff Scottsdale adopts and incorporates by reference the allegations set forth in Paragraphs 1 through 29 above as though completely and fully set forth herein.

41. The Policies' Damage to Your Work Exclusions bar coverage for "'property damage' to 'your work' arising out of it or any part of it and included in the 'product-completed operations hazard.'"

42. The Damage to Your Work Exclusion "does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor."

43. The term "products-completed operations hazard" is defined in the Policies as "property damage" "occurring away from premises you own or rent and arising out of 'your product' or 'your work' except: (1) products that are still in your physical possession; or (2) work that has not yet been completed or abandoned."

44. The definition of "products-completed operations hazard" also states that Defendant ProCom's work will be considered completed or abandoned at the earliest of the following times: "(a) when all of the work called for in [the] contract has been completed; (b) when all of the work to be done at the job site has been completed if [the] contract calls for work at more than one job site; (c) when that part of the work done at a job site has been put to its

intended use by any person ... other than another contractor or subcontractor working on the same project ...."

45.    Accordingly, all of the damages being asserted by Defendant Cox and Defendant Renda against Defendant ProCom, including the costs to repair or replace Defendant ProCom's allegedly defective work at the Tower, are excluded from coverage pursuant to the Damage to Your Work Exclusions.

WHEREFORE, Plaintiff Scottsdale respectfully requests entry of judgment in its favor (a) declaring that the Policies do not provide coverage for Defendant Cox and Defendant Renda's claims and alleged damages in the Underlying Lawsuit, (b) declaring that neither Defendant ProCom nor Defendant R. David Stiles d/b/a ProCom is entitled to a defense under the Policies in connection with the Underlying Lawsuit, (c) declaring that Plaintiff Scottsdale is not obligated to indemnify Defendant ProCom or Defendant R. David Stiles d/b/a ProCom for any damages awarded against them in favor of Defendant Cox or Defendant Renda in the Underlying Lawsuit, and (d) awarding such other relief as this Court deems just and proper.

Dated this __18th__ day of September, 2009.

Respectfully submitted,

_____
Michael B. Germain, Fla. Bar No. 066713
Attorney for Scottsdale Insurance Company
PHELPS DUNBAR, LLP
100 South Ashley Drive, Suite 1900
Tampa, Florida 33602-5311
Tel.: (813) 472-7550
Fax: (813) 472-7570
germainm@phelps.com